| | |
|---|---|
| 1 | Timothy L. Reed, Bar No. 258034<br>treed@fordharrison.com |
| 2 | FORD & HARRISON LLP<br>1901 Harrison Street, Suite 1650 |
| 3 | Oakland, CA 94612<br>Telephone: (415) 852-6910 |
| 4 | Facsimile: (415) 852-6925 |
| 5 | Jenny S. Choi, Bar No. 285839<br>jchoi@fordharrison.com |
| 6 | FORD & HARRISON LLP<br>350 South Grand Avenue, Suite 2300 |
| 7 | Los Angeles, CA 90071<br>Telephone: (213) 237-2400 |
| 8 | Facsimile: (213) 237-2401 |
| 9 | Attorneys for Defendant<br>WALMART INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIJON HILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., a Delaware corporation; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 4:19-cv-05436-JST<br><br>[Assigned to the Hon. Jon S. Tigar]<br><br>**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; POINTS AND AUTHORITIES**<br><br>Date: January 13, 2021<br>Time: 2:00 p.m.<br>Ctrm.: 6<br><br>Action Filed: July 19, 2019<br>Date of Removal: August 29, 2019 |

FORD & HARRISON LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WSACTIVELLP:11874361.1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
4:19-CV-05436-JST

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 3

I.    INTRODUCTION ........................................................................................................... 3

II.   FACTUAL BACKGROUND .......................................................................................... 4

      A.    Walmart Entered Into A Consulting Agreement With Scout To Provide Models ................................................................................................................. 4

      B.    Plaintiff Was Never An Employee of Walmart ....................................................... 5

      C.    Consistent With Industry Practice, Walmart Paid Scout, Not Plaintiff ................. 7

III.  LEGAL ARGUMENT .................................................................................................... 8

      A.    Summary Judgment Standard ................................................................................ 8

      B.    Plaintiff's Claims For Waiting Time Penalties Fail As A Matter Of Law Because Analysis Of The Applicable Borello Factors Establishes That Plaintiff Was Not An Employee Of Walmart ......................................................... 8

      C.    Plaintiff's Claims For Waiting Time Penalties Fail As A Matter Of Law Because Walmart Was Not Responsible For Paying Plaintiff's "Wages" ............ 11

      D.    Plaintiff's Claims For Waiting Time Penalties Fail As A Matter Of Law Because Any Failure to Timely Pay Was Not Willful ......................................... 12

IV.  CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................. 8

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................................. 8

*Hardage v. CBS Broad. Inc.*,
 427 F.3d 1177 (9th Cir. 2005) ................................................................................. 8

*Hennighan v. Insphere Ins. Sols., Inc.*,
 38 F.Supp.3d 1083 (N.D. Cal. 2014) ..................................................................... 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
 475 U.S. 574, 586-87 (1986) .................................................................................... 8

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
 709 F. Supp. 2d 802 (C.D. Cal. 2010) ..................................................................... 8

**STATE CASES**

*Amaral v. Cintas Corp.*,
 163 Cal. App. 4th 1157 (2008) .............................................................................. 12

*Barnhill v. Robert Saunders & Co.*,
 125 Cal. App. 3d 1 (1981) ..................................................................................... 12

*Beaumont-Jacques v. Farmers Grp., Inc.*,
 217 Cal. App. 4th 1138 (2013) .............................................................................. 10

*Choate v. Celite Corp.*,
 215 Cal. App. 4th 1460 (2013) .............................................................................. 12

*Cristler v. Express Messnger Sys., Inc.*,
 171 Cal. App. 4th 72 (2009) ................................................................................... 9

*Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*,
 4 Cal. 5th 903 .................................................................................................... 9, 11

*Garcia v. Border Transportation Group, LLC*,
 28 Cal. App. 5th ...................................................................................................... 9

*S.G. Borello & Sons, Inc. v. Dep't of Indus' Relations*,
 48 Cal.3d 341 (1989) ......................................................................................... 9, 11

*Zaremba v. Miller*,
 113 Cal. App. 3d Supp. 1 (1980) ........................................................................... 11

**STATE STATUTES**

Cal. Lab. Code
 § 200(a) .................................................................................................................... 11
 § 203 ................................................................................... 2, 3, 4, 8, 9, 11, 12
 § 3353 .......................................................................................................................... 9
8 Cal. Code Regs. § 13520 ...................................................................................... 12

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................ 2, 8

Ford & Harrison
LLP
Attorneys At Law
San Francisco

- iii -

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
4:19-CV-05436-JST

# NOTICE OF MOTION AND MOTION

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, defendant Walmart, Inc. ("Walmart"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, will and hereby does move for an order granting summary judgment in its favor and against plaintiff Bijon Hill ("Plaintiff").

Said Motion will be made on the grounds that the uncontroverted evidence establishes that Counts One through Ten of Plaintiff's Complaint for waiting time penalties pursuant to section 203 of the California Labor Code have no merit because Walmart was not Plaintiff's employer and was not legally mandated to pay Plaintiff wages. Alternatively, assuming *arguendo* that Walmart was Plaintiff's employer, Walmart did not willfully refuse to pay Plaintiff wages.

Defendant's Motion is based on this Notice of Motion and Motion; the concurrently filed Memorandum of Points and Authorities; the Declarations of Anne Tamrazi and Timothy L. Reed; the pleadings and papers filed herein; and such other oral and written argument as may be presented to the Court at the hearing on this Motion.

Dated: November 13, 2020

Respectfully submitted,

FORD & HARRISON LLP

By: */s/ Timothy L. Reed*
Timothy L. Reed
Jenny S. Choi
Attorneys for Defendant
WALMART INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff was a freelance model at Walmart photo shoots on several occasions over several years. At all relevant times, Plaintiff was represented by Scout Talent Management, LLC ("Scout"). Walmart had a written agreement with Scout (the "Consultant Agreement"), through which Scout contracted with Walmart to provide various models for Walmart shoots (including Plaintiff). Scout negotiated the fee Walmart would pay *Scout* for Plaintiff's services; provided *all* direction to Plaintiff regarding when, where, and how Plaintiff was to show up for shoots; and ultimately remitted payment to Plaintiff for the shoots at issue in the instant action.

Plaintiff was self-employed as a model, and she provided her modeling services to several clients. Walmart *never* interviewed Plaintiff for an employment position; *never* issued Plaintiff an offer of employment; *never* on-boarded Plaintiff as an employee; *never* provided Plaintiff direction regarding when, where, and how she was to show up for shoots; *never* evaluated Plaintiff's performance or disciplined her; *never* communicated with Plaintiff outside of her Walmart shoots; *never* issued any payment to Plaintiff for any modeling services; and never provided Plaintiff with tax documents of any kind.

At no time over the course of several years did Plaintiff ever communicate with Walmart regarding *any* perceived employment-related concerns, including issues regarding payment for her shoots. However, she now claims that she was a Walmart employee; that she that she should have been issued payment at the conclusion of each photo shoot; that she did not receive payment at the end of each shoot; and that because she was not paid at the conclusion of each shoot, she is entitled to waiting time penalties under section 203 of the California Labor Code. These assertions as baseless, as the undisputed facts demonstrate that Plaintiff was never an employee of Walmart. As such, Walmart cannot, as a matter of law, be found liable for penalties for willfully failing to timely pay Plaintiff wages. Section 203 – on its face – requires an employer-employee relationship, which does not exist here.

Even if the Court were to find that Plaintiff was an employee of Walmart – which she was not – no liability lies because there is a good faith dispute regarding whether Walmart owed

1  Plaintiff wages at the conclusion of each photo shoot. Specifically, Walmart had a well-reasoned belief that Plaintiff was an independent contractor and that Scout bore the exclusive responsibility of paying her. Accordingly, no failure to pay wages on Walmart's part can be said to be "willful[-]." *See* Cal. Lab. Code § 203.

For the foregoing reasons, Plaintiff's claims fail as a matter of law, and Walmart respectfully requests that this Court grant summary judgment.

## II. FACTUAL BACKGROUND

### A. Walmart Entered Into A Consulting Agreement With Scout To Provide Models

For the 10 photo shoots at issue in this litigation, Plaintiff was always represented by Scout pursuant to an agreement between Plaintiff and that agency.[1] (Plaintiff's Deposition ("Pl. Dep.") 27:11-13, 34:11-17.)[2] On May 23, 2016, Walmart entered into the Consultant Agreement with Scout, through which Scout agreed to perform services as set forth in a statement of work. (Declaration of Anne Tamrazi ("Tamrazi Decl."), ¶ 6, Ex. B.) Under the terms of the Consultant Agreement, Walmart and Scout were independent contractors, and each were "solely responsible for hiring, firing, promoting, demotion, rates of pay, taxes, benefits and other terms and conditions in regard to its own personnel." (Tamrazi Decl., ¶ 6, Ex. B at ¶ 4(a).) The Consultant Agreement further provided, "[Scout]'s personnel are not considered employees of Walmart, are not entitled to any benefits that Walmart grants its employees and have no authority to act on Walmart's behalf." (*Id.*)

On May 23, 2016 and February 1, 2017, respectively, Walmart and Scout entered into a Master Statement of Work ("MSOW"), which addressed the services to be provided to Walmart by Scout pursuant to the Consultant Agreement. (Tamrazi Decl., ¶¶ 7, 8, Exs. C, D.) As set forth

---

[1] The photo shoots subject to the instant litigation occurred on the following dates: (1) July 21, 2016; (2) August 24-25, 2016; (3) September 20-21, 2016; (4) November 10, 2016; (5) November 21, 2016; (6) January 5-6, 2017; (7) February 8-9, 2017; (8) April 21, 2017; (9) May 24-25, 2017; and (10) August 24, 2017. (*See* Complaint, generally.)

[2] The transcript of Plaintiff's deposition is attached to the Declaration of Timothy L. Reed ("Reed Decl.") as Exhibit A.

in the MSOWs, Scout agreed to "provide consultants to Walmart's Item and Marketing production staff to support the creation of imagery for the Walmart.com website" on "an as-needed, intermittent or project basis." (Tamrazi Decl., ¶¶ 7, 8, Exs. C, D.) In exchange, Walmart was to pay Scout a daily flat rate for Scout's models and an additional 20%. (Tamrazi Decl., ¶¶ 7, 8, Exs. C, D.)

### B. Plaintiff Was Never An Employee of Walmart

Prior to her first Walmart shoot – in our around 2013 – Plaintiff participated in a casting meeting for Walmart. (Pl. Dep. 25:3-5, 28:19-31:1.) At such castings, models are typically photographed and measured. (Tamrazi Decl., ¶ 9.) Their information is then passed along to someone on Walmart's creative team to assess whether the model should or should not be used. (Tamrazi Decl., 9.) Plaintiff concedes that her casting for Walmart was not a "job interview like someone normally would have." (Pl. Dep. 28:17-24.)

Plaintiff never submitted an employment application to Walmart. (Pl. Dep. 27:18-20.) Walmart never provided Plaintiff a job offer. (Pl. Dep. 32:19-22.) Plaintiff never completed hiring documentation for Walmart, including documentation confirming her eligibility to work, tax documents such as an IRS Form W-9 or Form W-4, health insurance forms, or direct deposit paperwork. (Pl. Dep. 33:6-14.) As Plaintiff was not a Walmart employee, Walmart never issued Plaintiff an employee handbook or provided other employment-related policies. (Pl. Dep. 33:15-34:1.) Plaintiff never participated in any employee orientation or training with Walmart. (Pl. Dep. 34:2-4.) Walmart never provided Plaintiff with any performance evaluation, nor did Walmart ever discipline her. (Pl. Dep. 34:5-10.)

Walmart arranged for Plaintiff's attendance at photo shoots through Scout. (Pl. Dep. 27:11-13.) There were never any pre-shoot communications between Walmart and Plaintiff. (Pl. Dep. 38:21-39:8, 68:22-69:1.) All information pertaining to the shoot, including time, location, and Plaintiff's necessary physical state for the shoot were communicated by Walmart to Scout. (Pl. Dep. 32:9-18.) In turn, Scout relayed the information to Plaintiff. (Pl. Dep. 35:22-36:7.) Plaintiff was free to decline potential bookings from Walmart. (Pl. Dep. 39:18-22.) Rates for the

shoots were negotiated between Walmart and Scout, and Plaintiff did not negotiate any rate with Walmart. (Pl. Dep., 36:1-3; Tamrazi Decl., ¶ 10.)

Plaintiff arranged for and paid for her own travel and accommodations and did not seek any reimbursement from Walmart. (Pl. Dep. 92:15-24, 103:10-17.) Plaintiff made tax deductions for expenses related to her photo shoots for Walmart, including for flights, hotels, food, beauty products, hair care, and mileage. (Plaintiff's Depo. 148:9-24.) Plaintiff also made tax deductions in connection with her modeling career for hair, makeup, nails, and fitness. (Plaintiff's Depo. 148:25-149:19.)

Plaintiff's photo shoots took place at a Walmart studio in South San Francisco, California. (Pl. Dep. 40:25-41:5.) Upon arriving at the studio, Plaintiff would check at the reception area and be provided with a visitor's tag indicating she was not a Walmart employee. (Tamrazi Decl., ¶ 11.) From there, Plaintiff was directed by a producer to a specific area of the studio to work with a team of freelancers who generally were not Walmart employees. (Tamrazi Decl., ¶ 11.) The team consisted of Plaintiff, a photographer, a stylist, and an assistant stylist. (Tamrazi Decl., ¶ 11.) These individuals on the team were responsible for creating an end product of photographs to be used on Walmart's website. (Tamrazi Decl., ¶ 12.) During each shoot, the stylist would provide Plaintiff with her outfits, and the assistant stylist used her discretion to provide Plaintiff with complimentary accessories. (Pl. Dep. 99:12-13; Tamrazi Decl. ¶ 12.) The photographer told Plaintiff what general types of poses should be done, and – relying on her special skills as a model – Plaintiff positioned herself accordingly. (Pl. Dep. 99:24-100:1; Tamrazi Decl., ¶ 12.) This process repeated until lunch. (Pl. Dep. 100:2-5.) After lunch, the team continued this shooting process until the end of the day (usually 4:30 p.m.). (Pl. Dep. 101:9-20.) During the course of the day, the producer (who sometimes was also a contractor) moved between Plaintiff's shoot and other shoots taking place at the studio; in Plaintiff's words, he or she would "kind of float[-] around." (Pl. Dep. 100:14-19.) In other words, the producer was not present and in control of any particular shoot or the activities of the team. (Tamrazi Decl., ¶ 12.)

At the conclusion of each shoot, Plaintiff signed a talent voucher and provided it to Walmart. (Pl. Dep. 27:21-28:15.) In addition to including a daily rate for Plaintiff's shoot,[3] Scout's 20% agency fee, and a total amount to be invoiced to Scout, the talent vouchers also included language through which Plaintiff acknowledged that she was to be paid a modeling fee for Walmart's use of her likeness. (Pl. Dep. 120:22-121:14, 112:11-116:14, 117:5-119:7, 119:17-25; Tamrazi Decl., ¶ 14, Ex. E.) These vouchers were the only signed document Plaintiff provided to Walmart. (Pl. Dep. 27:21-28:15.) Plaintiff never spoke to anyone at Walmart in between shoots. (Pl. Dep. 107:19-23.)

### C. **Consistent With Industry Practice, Walmart Paid Scout, Not Plaintiff**

At the end of each calendar week, Walmart sent Scout an email confirming Plaintiff's and other models' attendance at shoots and attaching any applicable talent vouchers. (Tamrazi Decl., ¶ 10.) The Consultant Agreement and MSOWs provided that Scout would invoice Walmart and collect payment. (Tamrazi Decl., ¶¶ 6-8, Ex. B at ¶ 1, Exs. C-D at ¶¶ VIII.) After receipt of an invoice, Walmart tendered payment to Scout. (Tamrazi Decl., ¶ 10.) According to Plaintiff, Scout would then provide a payment to Plaintiff. (Pl. Dep. 37:7-11, 38:4-8.)

It was Walmart's understanding that this payment process was consistent with the modeling industry's standard practice. (Tamrazi Decl., ¶ 15.) Walmart never issued any paycheck, IRS Form W-2, or IRS Form 1099 to Plaintiff. (Pl. Dep. 37:21-22.) Tellingly, Plaintiff never objected to this practice or asked to be paid directly by Walmart. (Pl. Dep. 58:15-17, 61:8-17.) In fact, in 2016 and 2017, Plaintiff modeled for several other companies who also provided payment for her bookings directly to Scout. (Pl. Dep. 144:13-145:6.) Walmart did not believe it had created, nor did it ever intend to create, an employment relationship with Plaintiff. (Tamrazi Decl., ¶ 16.)

---

[3] For one of the shoots at issue in this action, the fee for Plaintiff's services included a half-hour of work at a separate hourly rate Scout charged Walmart for Plaintiff's modeling of "intimates." (Tamrazi Decl., ¶ 14, Ex. E.)

## III. LEGAL ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing the evidence in a light most favorable to the nonmoving party, the Court determines that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 802, 807 (C.D. Cal. 2010). A fact is material if it is legally necessary to the proof or defense of a claim, and a genuine dispute is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, then the burden shifts to the opposing party to set forth specific facts showing a genuine triable issue. *Id*. at 322-233.

To carry its burden of proving a genuine issue, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he [nonmoving] party must come forward with specific facts showing that there is a genuine issue for trial.'" *TYR Sport, Inc.*, 709 F. Supp. 2d at 807-08 *quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Further, although "the evidence of the [non-movant] is to be believed, and all justifiable inferences are to be drawn in his favor," such inferences must not be "drawn out of the air," as the opposing party still must produce a factual predicate from which the inference may be drawn. *Id.* at 808. Likewise, the non-movant must "go beyond the pleadings" and provide specific evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 257. "'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005) *quoting Anderson*, 477 U.S. at 249-50.

### B. Plaintiff's Claims For Waiting Time Penalties Fail As A Matter Of Law Because Analysis Of The Applicable *Borello* Factors Establishes That Plaintiff Was Not An Employee Of Walmart

California Labor Code section 203 provides, in pertinent part, as follows: "If an employer willfully fails to pay . . . any wages of an ***employee*** who is discharged or who quits, the wages of

the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days" (emphasis added). It is well settled that California's wage-and-hour laws are applicable only to employees, not independent contractors. *Cristler v. Express Messnger Sys., Inc.,* 171 Cal. App. 4th 72, 77, 83-84 (2009).

For decades, California courts have used the *Borello* test to decide if a worker is an employee or an independent contractor.[4] *See S.G. Borello & Sons, Inc. v. Dep't of Indus' Relations,* 48 Cal.3d 341 (1989); *Garcia v. Border Transportation Group, LLC*, 28 Cal. App. 5th 558, 571 (2018). Under *Borello,* the principal test is whether the putative employer has "the right to control the manner and means of accomplishing the result desired." *Id.* at 404 (emphasis added). California Labor Code section 3353 defines an independent contractor as one who "renders a service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." As discussed in *Borello*, a number of other factors should be evaluated, such as the employee's investment in equipment or materials, her employment of helpers, whether the service rendered requires a special skill, the degree of permanence of the working relationship, whether the service rendered is an integral part of the alleged employer's business, the method of payment, whether by the time or by the job, and whether the parties believe they are in an employee-employer relationship. *Id.* at 351, 354-355.

As set forth above, Walmart exercised no control over the manner and means by which Plaintiff performed her modeling services. Walmart retained other independent contractors who controlled the shoots and were responsible for producing the end product. (Tamrazi Decl., ¶ 11.)

---

[4] In 2018, the California Supreme Court issued a decision in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles County,* 4 Cal. 5th 903, setting forth the ABC test for employment status for the purposes of the Wage Orders. Because the *Dynamex* decision expressly declined to decide whether the ABC test applies to Labor Code claims that are not dependent on IWC Wage Orders, the ABC test does not apply to these claims, which are not predicated on IWC Wage Orders. *Garcia v. Border Transportation Group, LLC*, *supra*, 28 Cal. App. 5th at 571. Further, all of the alleged violations occurred before *Dynamex* was decided. Therefore, the *Borello* test applies.

1  Plaintiff – as a model – engaged in an occupation distinct and entirely separate from Walmart's primary business as a retailer. (Tamrazi Decl., ¶ 3.) On Plaintiff's end, any communication or direction concerning Plaintiff booking Walmart shoots was addressed between Plaintiff and her agency, Scout. (Pl. Dep. 27:11-13, 36:1-3, 38:21-39:8, 68:22-69:1.) Further, Plaintiff rendered a service that required a special skillset for a limited, discrete period of time – one or, rarely, two days. (Tamrazi Decl., ¶ 3.)

There is no evidence that Walmart had any control or influence over Plaintiff's relationship with Scout, any commissions from Plaintiff to Scout, the deductions Scout took, any tax payments, or any other amounts Plaintiff received from Scout. Pursuant to the terms of the Consultant Agreement, Scout invoiced Walmart, and Walmart remitted payment to Scout. (Tamrazi Decl., ¶¶ 6-8, Ex. B at ¶ 1, Exs. C-D at ¶¶ VIII.) Scout tendered payment to Plaintiff – not Walmart. (Plaintiff's Depo. 37:7-11, 38:4-8.) The Consultant Agreement called for Walmart to pay Scout a daily rate based on Plaintiff's modeling shoots. (Tamrazi Decl., ¶¶ 6-8, Ex. B at ¶ 1, Exs. C-D at ¶¶ VIII.)

Further, Walmart did not believe it had created, nor did it ever intend to create, an employment relationship with Plaintiff. (Tamrazi Decl., ¶ 16.) It is implausible that Plaintiff reasonably believed such an employment relationship existed, either. Plaintiff is a self-employed model who provided her services to several clients during the timeframe relevant to this action. (Pl. Dep. 144:13-145:6.) Plaintiff's self-employment is evidenced by her making tax deductions for expenses related to her photo shoots for Walmart and her modeling career generally. (Pl. Dep. 148:9-149:19.) Of note, Plaintiff never applied to work at Walmart, completed hiring documentation, or underwent on-boarding, orientation, or training. (Pl. Dep. 27:18-20, 32:19-22, 33:6-14, 33:15-34:10.) No tax forms have ever been exchanged between Plaintiff and Walmart, nor has Walmart ever paid Plaintiff. (Pl. Dep. 33:6-14, 37:21-22.) *See Hennighan v. Insphere Ins. Sols., Inc.,* 38 F.Supp.3d 1083, 1105 (N.D. Cal. 2014); *Beaumont-Jacques v. Farmers Grp., Inc.,* 217 Cal. App. 4th 1138, 1144-1145 (2013). Significantly, Plaintiff and Walmart never

communicated directly with each other with respect to any aspect of the shoots, including payment. (Pl. Dep. 32:9-18, 35:22-36:7, 38:21-39:8, 68:22-69:1.)[5,6]

### C. Plaintiff's Claims For Waiting Time Penalties Fail As A Matter Of Law Because Walmart Was Not Responsible For Paying Plaintiff's "Wages"

Labor Code section 203 only authorizes penalties for the failure to pay timely "wages." "Wages" is defined as including "all amounts for labor performed by employees." Cal. Lab. Code § 200(a). Because Plaintiff was not an employee of Walmart, as established above, she did not receive, nor was she entitled to receive, wages from Walmart; thus Walmart cannot be held liable for failing to timely pay wages. (*See*, *supra,* Section III.B.) Here, the evidence demonstrates that Walmart was contractually obligated to pay invoiced amounts to Plaintiff's agent, Scout. (Tamrazi Decl., ¶¶ 6-8, Ex. B at ¶ 1, Exs. C-D at ¶¶ VIII.) Scout then issued payment to Plaintiff. (Pl. Dep. 37:7-11, 38:4-8.)

---

[5] Walmart anticipates that Plaintiff will attempt to rely on *Zaremba v. Miller,* 113 Cal. App. 3d Supp. 1 (1980) in support of her claims. However, such reliance would be misguided. As a preliminary matter, *Zaremba* is a 40-year-old decision out of the Los Angeles Superior Court Appellate Department that reversed a Los Angeles Municipal Court decision. Additionally, it was decided nearly a decade before *Borello*. *Zaremba* is also distinguishable on the facts. In *Zaremba,* the photographer was deemed to be the employer based on his exercise of substantial control over all aspects of the shoot. However, here, other workers at the photo shoots were generally freelancers not employed by Walmart, such as photographers, stylists, and assistant stylists. Pursuant to the Agreement, Walmart was required to remit payment to Scout, not to Plaintiff, in contrast to *Zaremba*. (Tamrazi Decl., ¶¶ 6-8, Ex. B at ¶ 1, Exs. C-D at ¶¶ VIII.) Further, the model in *Zaremba* was not in a business distinct from that of the photographer, but rather rendered services integral to the photographer's business.

[6] Even if the *Dynamex* standard applied (it does not), Walmart still was not Plaintiff's employer. The *Dynamex* court applied the ABC test, which finds that a worker is considered an employee unless the hiring entity satisfies all three of the following conditions: (1) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (2) the worker performs work that is outside the usual course of the hiring entity's business; and (3) the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed. *See Dynamex*, 4 Cal. 5th 903 at 964. Under these facts, Plaintiff is still an independent contractor because (1) she was generally controlled and directed by freelance workers including photographers and stylists that were not Walmart employees; (2) Plaintiff's work as a model was outside Walmart's business as a retailer; and (3) Plaintiff was customarily engaged in an independently established trade – modeling. For these reasons, Walmart was not Plaintiff's employer and had no responsibility to pay Plaintiff any wages.

### D. Plaintiff's Claims For Waiting Time Penalties Fail As A Matter Of Law Because Any Failure to Timely Pay Was Not Willful

Waiting time penalties are imposed only for a "willful" failure to timely pay wages. Cal. Lab. Code § 203(a). A "willful" failure to pay wages occurs "when an employer intentionally fails to pay wages to an employee when those wages are due." 8 C.C.R. § 13520. "[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." *Id.* A "good faith dispute" occurs whenever "[a]n employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Amaral v. Cintas Corp.,* 163 Cal. App. 4th 1157, 1203-1204 (2008). Significantly, ***it is immaterial whether the defense is ultimately unsuccessful***. *Id.* "So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense" to the Court will "negate a finding of willfulness." *Id. citing* 8 Cal. Code Regs. § 13520*; see also Choate v. Celite Corp.,* 215 Cal. App. 4th 1460, 1468 (2013); *Barnhill v. Robert Saunders & Co.,* 125 Cal. App. 3d 1, 8-9 (1981).

As set forth above, Walmart has presented substantial evidence in support of its position that it was not Plaintiff's employer based both on the contractual agreements between Walmart and Plaintiff's agent Scout, and the objective conduct of both Walmart and Plaintiff. (*See*, *supra,* Section III.B.) Even if Walmart is found to have been Plaintiff's employer, it is undisputed that Walmart's position that it was not Plaintiff's employer is supported by controlling legal authority, which demonstrates that a good faith dispute based in law exists. Walmart did not intend to enter into an employment relationship with Plaintiff, and it had a reasonable belief upon which it believed that it had not entered into such a relationship. Therefore, any failure to pay wages timely was not willful, and Plaintiff is not entitled to any penalties. *Amaral v. Cintas Corp. No. 2, supra*, 163 Cal. App. 4th at 1201.

///

FORD & HARRISON LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## IV. **CONCLUSION**

Based on the foregoing, Walmart respectfully requests that the Court grant its motion for summary judgment.

Dated: November 13, 2020

Respectfully submitted,

FORD & HARRISON LLP

By: */s/ Timothy L. Reed*
Timothy L. Reed
Jenny S. Choi
Attorneys for Defendant
WALMART INC.

# **PROOF OF SERVICE**

I, Mary Garner, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 350 South Grand Avenue, Suite 2300, Los Angeles, California 90071. On November 13, 2020, I served a copy of the within document(s):

**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; POINTS AND AUTHORITIES**

☒ ELECTRONICALLY: I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System. I served those parties who are not registered participants of the ECF System as indicated below.

☒ by e-mail or electronic transmission. Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent on the date shown below to the e-mail addresses of the persons listed below. My e-mail address is mgarner@fordharrison.com. I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Joseph H. Low IV<br>The Law Firm of Joseph H. Low IV<br>100 Oceangate, 12th Floor<br>Long Beach, CA 90802<br>Telephone: (562) 901-0840<br>Facsimile: (562) 901-0841<br>joseph@jhllaw.com<br>megant@jhllaw.com | Attorneys for Plaintiff |
| Roger Y. Muse<br>John R. Matheny<br>Alyssa Schabloski<br>Excelsior Law<br>9595 Wilshire Boulevard, Suite 900<br>Beverly Hills, CA 90212<br>Telephone: (310) 205-3981<br>Facsimile: (310) 205-0594<br>roger@excelsior-law.com<br>john@excelsior-law.com<br>alyssa@excelsior-law.com | Attorneys for Plaintiff |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 13, 2020, at Los Angeles, California.

*/s/ Mary Garner*
———————————————
Mary Garner

FORD & HARRISON LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WSACTIVELLP:11874361.1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
4:19-CV-05436-JST