JOSEPH H. LOW IV (SBN 194897)
joseph@jhllaw.com
THE LAW FIRM OF JOSEPH H. LOW IV
100 Oceangate, 12th Floor
Long Beach, CA 90802
Telephone: (562) 901-0840
Facsimile: (562) 901-0841

ROGER Y. MUSE (SBN 147120)
roger@excelsior-law.com
JOHN R. MATHENY (SBN 149532)
john@excelsior-law.com
EXCELSIOR LAW
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Telephone: (310) 205-3981
Facsimile: (310) 205-0594

Attorneys for Plaintiff
BIJON HILL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIJON HILL, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>WALMART, INC., a Delaware corporation; and DOES 1-25, inclusive,<br><br>        Defendants. | CASE NO. 4:19-cv-05436-JST<br>[Assigned to the Hon. Jon S. Tigar]<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed Concurrently with:*<br>    *-Declaration of Joseph H. Low IV*<br><br>Date:  January 13, 2021<br>Time:  2:00 p.m.<br>Dept:  6<br><br>Action Filed:      July 19, 2019<br>Date of Removal:  August 29, 2019 |

# <u>TABLE OF CONTENTS</u>

Table of Authorities ..................................................................................................4

I. Introduction ...........................................................................................................7

II. Factual Summary ..................................................................................................7

III. Argument .............................................................................................................9

    A. WALMART Has Burden of Proof to Establish that HILL
    was an Independent Contractor ....................................................................9

    B. WALMART was HILL's Employer Under all Three
    Alternative Tests in the Wage Orders ........................................................11

    C. Established Canons of Statutory Interpretation and Case
    Authorities Confirm that the IWC Definition of Employment
    Controls Claims Under Wage Statutes .......................................................11

        1. The Wage Order Definitions Apply to Statutory Wage
        Claims Including Waiting Time Penalty Claims .........................12

        2. WALMART's Claim that the ABC Test Does Not
        Apply to Labor Code section 203 Claims is Meritless ...............13

    D. WALMART was HILL's Employer Pursuant to all Three
    Alternative Tests for Employment Stated in the Wage Orders ...............14

        1. *Martinez v. Combs:* The Wage Order Definitions of Employment .............15

        2. *Dynamex Operations West, Inc. v. Superior Court:*
        Interpretation of the "Suffer or Permit to Work"
        Definition of Employment and the ABC Test ............................15

        3. Since WALMART Has Not Proven all Three
        Elements of the ABC Test, It Has Not Met Its
        Burden of Proving that It Did Not Suffer or
        Permit HILL to Work.....................................................................17

            a. WALMART Has Not Proven Element A
            of the ABC Test ...............................................................17

            b. WALMART Cannot and Has Not Proven
            Element B of the ABC Test .............................................17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

    4.   WALMART was HILL's Employer Also by Virtue
        of its Having Controlled, Both Directly and Through
        Others, HILL's Hours, Wages and Working Conditions.............................18

    5.   WALMART "Employed" HILL under the
        Common-Law Definition of Employment....................................................20

E.  As HILL's Employer, WALMART was Obligated to
    Timely Pay HILL her Wages in Accordance with the
    Labor Code, an Obligation it Failed to Meet .............................................21

    1.   HILL's Wages Earned in Modeling Employment Came
        Due at the Conclusion of her Participation in the Event..............................21

F.  WALMART Willfully Failed to Make Timely Payment of
    HILL's Wages...........................................................................................21

    1.   Statutory Wage Rights and not Waivable ....................................................21

    2.   WALMART's Ignorance of the Ineffectiveness of its
        Contractual Attempts to Avoid its Statutory Wage
        Obligations Does Not Constitute a "Good Faith Defense"
        to HILL's Claims for Waiting Time Penalties..............................................23

IV. Conclusion ......................................................................................................27

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

**TABLE OF AUTHORITIES**

**Cases**

*Ainsworth v. State Bar*
     46 Cal. 3d 1218, 1234 (1988) .......................................................................25

*Anderson v. Liberty Lobby, Inc.*
     477 US 242, 247–248 (1986) ..........................................................................9

*Arthur Andersen v. Superior Court*
     67 Cal. App. 4th 1481, 1506-1507 (1998) ...............................................25, 26

*Balcorta v. Twentieth Century-Fox Film Corporation*
     208 F. 3d 1102, 1111(2000) .........................................................................22

*Barnhill v. Robert Saunders & Co.*
     125 Cal. App. 3d 1, 7 (1981) ............................................................21, 23, 24

*Brinker Restaurant Corp. v. Superior Court*
     53 Cal. 4th 1004, 1026 (2012) .................................................................12, 13

*Brumagim v. Tillinghast*
     18 Cal. 265, 271 (1861) ...............................................................................25

*Celotex Corp., v. Catrett*
     477 US 317, 322 (1986) .................................................................................9

*Dynamex Operations West, Inc. v. Superior Court*
     4 Cal. 5th 903, 948 (2018) ..........................................11, 13, 14, 16, 17

*FEI Enterprises, Inc., v. Yoon*
     194 Cal. App. 4th 790. (2011) .....................................................................24

*Futrell v. Payday California, Inc.*
     190 Cal. App. 4th 1419 (2010) ...............................................................12, 13

*Garcia v. Border Transportation Group, LLC*
     28 Cal. App. 5th 558, 561, 565 (2018) ........................................................14

*Ghory v. Al-Lahham*
     209 Cal. App. 3d 1487 (1989) .....................................................................23

*Hale v. Morgan*
     22 Cal. 3d 388, 396 (1978) ..........................................................................25

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

*Hanon v. Dataproducts Corp.*
    976 F. 2d 497, 500 (9th Cir 1992) ...................................................................9

*Livadas v. Bradshaw*
    512 U.S. 107, 125, 128 (1994) ....................................................................22

*Martinez v. Combs*
    49 Cal. 4th 35, 48, 49, 55, 61 (2010) ................10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 27

*Ming-Hsiang Kao v. Joy Holiday*
    12 Cal. App. 5th 947, 956-957 (2017) ................................................9, 10, 13, 14

*National Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*
    93 F. 3d 529, 533 (9th Cir 1996) ...................................................................9

*Pineda v. Bank of America, N.A.,*
    50 Cal. 4th 1389, 1400 (2010) ....................................................................25

*Robinson v. George*
    16 Cal. 2d 238 (1940) ............................................................................9, 10

*Ruhl v. Mott*
    120 Cal. 668, 678 (1898) ...........................................................................25

*S. G. Borello & Sons, Inc. v. Dept. of Industrial Relations*
    48 Cal. 3d 34 (1989) ...........................................................................15, 20

*Smith v. Superior Court*
    39 Cal. 4th 77, 83, 92 (2006) .............................................................11, 13, 14, 21

*Zaremba v. Miller*
    113 Cal. App. 3d Supp.1, 6 (1980) ......................................................20, 22, 27

**Statutes**

Business and Professions Code section 7108.5 ......................................................24

Labor Code sections 200-244 ......................................................................22

Labor Code section 201 ...........................................................8, 11, 13, 15, 20, 21, 22

Labor Code section 201 (a) .......................................................................11, 12

Labor Code section 203 .........................................7, 10, 11, 12, 13, 21, 22, 23, 24, 25, 26, 27

Labor Code section 219 ...........................................................................22

Labor Code section 219 (a) ....................................................................7, 22, 26, 27

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

Labor Code section 226 ................................................................13

Labor Code section 510 ...........................................................12, 13

Labor Code section 1194 ....................................................12, 13, 23

Labor Code section 3353 ............................................................15

**Regulations**

California Code of Regulations, title 8, section 11040 (2)(E) .................10

California Code of Regulations, title 8, section 11040 (2)(F) .................10

California Code of Regulations, title 8, section 11040 (2)(H) ................10

California Code of Regulations, title 8, section 13520 ................23, 24, 25

**Rules**

Fed. R. Civ. P. 56 (a) ..................................................................9

Fed. R. Civ. P. 56 (c)(2) ...............................................................9

**California Constitution**

California Constitution, article XIV, section 1 ...............................14

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

# I.

## INTRODUCTION

Plaintiff, BIJON HILL ("HILL" or "Plaintiff") seeks the recovery of waiting-time penalties under Labor Code section 203 arising out of ten separate employments she had with defendant, WALMART, INC. ("WALMART"). WALMART employed HILL for her services as an apparel model to participate in photography shoots conducted for the marketing of WALMART products.

WALMART misclassified HILL as an independent contractor. Consequently, WALMART failed to pay HILL's wages in accordance with the Labor Code, and delayed the payment of HILL's wages until well past the payment due-dates mandated by the Labor Code. The control WALMART operated over *each of* HILL's performances and over her hours, wages and working conditions clearly brought WALMART within each of the three alternative definitions of "employer" stated in the Wage Orders. With that employment status arose WALMART's non-negotiable and non-waivable obligation to pay HILL her wages in accordance with the Labor Code notwithstanding any business practice or agreement to the contrary. Labor Code section 219 (a). WALMART bears the burden of proving that HILL provided her services as an independent contractor, a burden WALMART failed to meet in its moving papers.

Thus, despite WALMART's misclassification of HILL as independent contractor, HILL, *in fact* provided her services as WALMART's *employee* and as such, she was entitled to be paid her wages in accordance with the Labor Code. WALMART's failures to timely pay HILL her wages subjects WALMART to liability for penalties under Labor Code section 203.

# II.

## FACTUAL SUMMARY

WALMART conducts photo shoots to market apparel that it sells. The photo shoots are conducted at a WALMART studio dedicated to photo shoots. (Declaration of Joseph Low ("Low Dec.") ¶ 2, Ex. 1, Plaintiff's Deposition ("Pl. Depo") 40:25- 41:5)). WALMART hired HILL for ten modeling employments. WALMART personnel including a photographer, producer and

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

stylist were present at each photo shoot.  (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 44:1-4; 44:25- 45:9)
They determined when and where the fittings were to take place, as well as starting and ending
and break times. (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 100:11-13; 105:14-106:3) WALMART
provided HILL with a pamphlet regarding the photo shoots including how they wanted the poses
to be.  (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 33:17-19) For each employment, WALMART sent
instructions for the terms of the employment to HILL's talent agent, which the agent then relayed
to HILL. (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 35:22-36:1; 65:4-24) Those instructions included when
and where to appear for the employment, as well as detailed instructions regarding hair, makeup,
pedicure, manicure, and what undergarments to wear. (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 65:10-24;
91:15-20)

At the photo shoots, HILL was directed in *every* aspect of her appearance and
performance.  WALMART was in full control of HILL at the photo shoots.  (Low Dec, ¶ 2, Ex.
1, Pl. Depo, 165:9-23) WALMART instructed HILL regarding the appearance of her hair and
nails, what to wear, where and how to position herself, where to stand and how and when to
move.  (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 97:19-98:2; 98:23-99:10) HILL was instructed when to
begin, when to take a break, and when to complete her services.  (Low Dec, ¶ 2, Ex. 1, Pl. Depo,
100:11-13; 105:14-106:3) Thus, WALMART personnel controlled HILL in *every* aspect of the
performance of her services.

At the end of each shoot, HILL was required to go to the WALMART producer's office
where she signed a voucher acknowledging the services she had performed that day. (Low Dec,
¶ 2, Ex. 1, Pl. Depo, 102:9-11) The vouchers stated that she would "receive payment based on
payment by WALMART." (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 121:15-25)

For each employment, HILL's wages came due *immediately* upon the conclusion of her
participation in the shoot. (Lab. Code, § 201). For each modeling assignment, WALMART did
not make payment of HILL's wages until more than 30 days after the date HILL was discharged
from the employment. WALMART made the payment for HILL's services by sending the
payment to HILL's agent, who then disbursed the payment to HILL, after deduction of its agency
fee.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

**III.**

**ARGUMENT**

Summary judgment is appropriate if the record, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp., v. Catrett* (1986) 477 US 317, 322; *National Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London* (9th Cir 1996) 93 F. 3d 529, 533. The rule does not require that there be an absolute absence of any factual dispute between the parties. Rather, there must be no genuine dispute as to any material fact. *Anderson v. Liberty Lobby, Inc.* (1986) 477 US 242, 247–248; *Hanon v. Dataproducts Corp*. (9th Cir 1992) 976 F. 2d 497, 500 (construing former Fed. R. Civ. P. 56(c)(2)'s phrase "no genuine issue of material fact" (now see Fed. R. Civ. P. 56(a) ("no genuine dispute as to any material fact")).

A fact is "material" if it is necessary to prove or defend against a claim. *National Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London* (9th Cir 1996) 93 F. 3d 529, 533. Courts determine whether a fact is material by looking to the governing substantive law. If the fact may affect the outcome of the case, it is material. *Anderson v. Liberty Lobby, Inc*. (1986) 477 US 242, 248. An issue or dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*. (1986) 477 US 242, 248; *Hanon v. Dataproducts Corp*. (9th Cir 1992) 976 F. 2d 497, 500.

**A.     WALMART Has Burden of Proof to Establish that HILL was an Independent Contractor**

"[U]nder California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Ming-Hsiang Kao v. Joy Holiday* (2017) 12 Cal. App. 5th 947, 956-957 ("*Kao*"). As the Supreme Court of California has held, "[t]he rule … is that the fact that one is performing work and labor for another is prima facie evidence of employment and such person is presumed to be a servant in the absence of evidence to the contrary." *Robinson v. George*, (1940) 16 Cal. 2d 238 ("*Robinson*"). "Once the employee establishes a prima facie case, the burden shifts to the employer, which may prove, if it can, that the presumed employee was

9

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

an independent contractor." *Kao, supra,* 12 Cal. App. 5th 947, 956-957.

In *Kao,* the defendant had regarded the plaintiff as a "trainee" rather than as an employee, although it had paid him for his services. The court found that the defendant tour operator had "suffered" the plaintiff to work for its benefit, and as such, was the plaintiff's employer. *Kao*, *supra*, 12 Cal. App. 5th at 956. Noting the three alternative Wage Order definitions for "employer" described by the Supreme Court in *Martinez*, the *Kao* court observed, "[t]he definitions are sufficiently broad to encompass a proprietor who employs a worker by contract, permits work by acquiescence, or suffers work to be performed by a failure to hinder." *Id.* The *Kao* court found that the defendant had "hired" the plaintiff and had permitted him to work for the defendant's benefit, and that, as such, the defendant was the plaintiff's employer under both the Wage Order (as codified at Cal. Code Regs., title 8, § 11040(2)(E), (2)(F), (2)(H)) and the FLSA. *Ibid*. The court, therefore, held that the plaintiff was entitled to have been paid his final wages immediately upon his discharge from his employment, and because he had not received payment until five days after his termination, he was entitled to penalties under Labor Code section 203. *Id*. at 962.

In *Robinson v. George*, (1940) 16 Cal. 2d 238 ("*Robinson*"), the plaintiff sought to establish that a non-party vehicle driver who had injured the plaintiff was an employee of the defendant. The California Supreme Court applied the common-law test for employment focusing on the right of the hiring party to control the performance of the worker. The Court found that such a relationship *did* exist based solely upon the *presumption* of employment which arose when the plaintiff presented evidence of the driver having provided his services to the defendant, the defendant having failed to present any evidence to overcome the presumption. *Id*. at 242-244.

Thus, pursuant to both *Kao* and *Robinson*, in the present case, because Plaintiff has presented evidence of her having provided Defendant with her modeling services (which even Walmart's moving papers establish), Walmart has the burden of proving that Plaintiff provided her services as an independent contractor – a burden which it has not met.

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

**B.** **WALMART was HILL's Employer Under all Three Alternative Tests in the Wage Orders**

WALMART's claim that HILL was an independent contractor ignores and misconstrues the facts and applicable law. Based upon the analysis of applicable wage law, it is clear that for each employment, HILL's relationship with WALMART was, in fact, an employment relationship obligating WALMART to *timely* pay HILL her wages in accordance with Labor Code section 201.

**C.** **Established Canons of Statutory Interpretation and Case Authorities Confirm that the IWC Definition of Employment Controls Claims Under Wage Statutes.**

Plaintiff has brought claims under Labor Code sections 201(a) and 203, both of which use the terms "employer" and "employee." WALMART claims that it was not Plaintiff's employer, making the proper interpretation of these terms the central issue in this motion. This is "logically inevitable," as only an "employer" has the duty to pay "wages." *Martinez v. Combs* (2010), 49 Cal. 4th 35, 49.

WALMART's motion is replete with facts which it contends establish that it was not HILL's employer. However, as discussed below, almost all of the facts cited by WALMART are irrelevant to the determination of HILL's status as an employee. WALMART has undoubtedly attempted to shift attention to irrelevant facts as it recognizes that the relevant facts establish that HILL was WALMART's employee.

Since the Legislature did not define "employer" and "employee" in the Labor Code itself, the court "look[s] to such aids as the legislative history of the measure and maxims of statutory construction," as well as the practical consequences of various interpretations on public policy, to determine the ultimate question of legislative intent. *Martinez,* 49 Cal. 4th at 51. This is how the Supreme Court has analyzed every major case in this area. *E.g., Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal. 5th 903 (statutory purpose is "the touchstone for deciding whether a particular category of workers should be considered employees rather than independent contractors"); *Smith*, 39 Cal. 4th at 83 (courts should "endeavor[] to promote rather than defeat the statute's general purpose, and avoid[] a construction that would lead to absurd

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

consequences"). Critically, in its analyses, the Court has consistently recognized that wage statutes exist to protect workers, and must be <u>liberally construed to achieve that protection</u>. *E.g., Martinez,* 49 Cal. 4th at 61.

Here, this court need not engage in an extended analysis. The Supreme Court performed the relevant analysis in *Martinez*. The plaintiffs in that case were strawberry pickers who asserted various statutory wage claims, specifically including claims for unpaid minimum wages under Labor Code section 1194 and for waiting time penalties under Labor Code section 203. *Martinez,* 49 Cal. 4th at 48. The plaintiffs asserted that the court should use the definitions of "employer" and "employee" set forth in the applicable wage order to interpret these terms for the purpose of their statutory wage claims as well.[1] *Ibid.* The defendants claimed that the court should limit these terms to their understanding at common law. After exhaustively reviewing the history and purpose of wage statutes, the Court concluded that limiting these terms to their common law understanding "would render the commission's definitions effectively meaningless." *Id.* at 65. "Only by deferring to wage orders' definitional provisions do we truly apply section 1194 according to its terms by enforcing the 'legal minimum wage.'" *Id.* at 62.

### 1. The Wage Order Definitions Apply to Statutory Wage Claims Including Waiting Time Penalty Claims

The Court of Appeals for the Second District confirmed that the definitions of "employer" and "employee" in the applicable wage order applied to statutory wage claims in *Futrell v. Payday California, Inc.* (2010), 190 Cal. App. 4th 1419. The plaintiff in that case did short-term engagements for a television production company. He asserted statutory violations, including violations of Labor Code section 510 and 1194 for failure to pay overtime and a violation of Labor

---

[1] The Legislature has enacted statutes that directly regulate wage claims, such as Labor Code section 201(a). In addition, the Industrial Welfare Commission ("IWC") has enacted wage orders pursuant to statutory authority granted by the Legislature. "Consequently, wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Brinker Restaurant Corp. v. Superior Court* (2012*)*, 53 Cal. 4th 1004, 1026.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

Code section 203 for failure to promptly pay wages upon termination of employment.  *Futrell*, 190 Cal. App. 4th at 1425.  The Court framed the primary issue as whether the defendant "was Futrell's employer for purposes of *sections 203*, 226, 510, and 1194 – *collectively the Labor Code wage statutes . . .*" *Id.* at 1428 (italics added).   The Court squarely held that "in cases involving the issue of whether an employer-employee relationship existed for purposes of the Labor Code wage statutes, we will apply the *Martinez* definition."  *Id.* at 1431.  *See also Brinker Restaurant Corp. v. Sup. Ct.* (2012*)*, 53 Cal. 4th 1004, 1039-40 (using the "suffer or permit" definition of a wage order to interpret a direct statutory provision addressing employment).

        The practical consequences also support using the wage order definition to inform statutory claims.  For example, suppose that a plaintiff alleges that she was paid below minimum wage; was not paid overtime; and was not paid promptly upon termination of the job.  *Martinez* explicitly directs that wage order definitions apply to the first claim, and the second clearly depends on a wage order as well.  Yet Defendant would have the court evaluate the prompt payment claim using an entirely different definition, which could lead to a determination that the plaintiff was an employee for two of the claims, but not for the third – *when all claims arose from the same job and the same set of facts*.  This is the situation the Court of Appeals faced in *Kao v. Joy Holiday* (2017), 12 Cal. App. 5th 947.  The Court rejected this unworkable situation, applying the wage order definitions to *all* the wage claims, citing *Martinez*, *id*. at 956, and imposing the Labor Code section 203 penalties as to a wage payment made five days after termination, *id.* at 962-63.  *See also Smith*, 39 Cal. 4th at 92 ("The plain purpose of Labor Code sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge.").

## 2. WALMART's Claim that the ABC Test Does Not Apply to Labor Code section 203 Claims is Meritless

        WALMART contends in footnote 4 of its MPA that the ABC test adopted in *Dynamex* is inapplicable because the *Dynamex* court "expressly declined to decide whether the ABC test applies to claims that do *not* arise from IWC Wage Orders" and therefore the ABC test does not apply to Labor Code section 203 claims. Such an approach is contrary to the Supreme Court's direction in *Martinez* that wage statutes must be liberally construed to achieve protections for

workers that wage statutes are designed to achieve. *Martinez*, 49 Cal. 4th at 61. This approach of applying wage order definitions to some wage claims but not others was rejected by the court in *Kao v. Joy Holiday* (2017), 12 Cal. App. 5th 947, where the Court, citing *Martinez*, applied the wage order definitions to <u>*all*</u> the wage claims, including waiting time penalties. *Id*. at 956, 962-63.

Failing to use the same definition of "employer" in all wage claims would lead to exactly the sort of "absurd consequence" which the Supreme Court has warned against. *See Smith*, 30 Cal. 4th at 83. California law necessarily tolerates the potential for different characterizations of employment "when different statutory schemes have been enacted for different purposes." *Dynamex*, 4 Cal. 5th at 948. But this does not extend to different characterizations *within the same statutory scheme*, especially when the wage orders are promulgated by an agency empowered with quasi-legislative authority, confirmed by California voters. California Constitution, article XIV, section 1; *Martinez*, 49 Cal. 4th at 55. The characterization of employment should be uniform for all wage claims, whether purely statutory or based on a violation of wage orders.

The *Garcia* case cited by Defendant is not controlling. In *Garcia*, the Fourth District Court of Appeals attempted to draw a distinction between purely statutory wage claims and wage order-based claims, but it did so regarding an *unpublished* portion of the opinion. *Garcia v. Border Transportation Group, LLC* (2018), 28 Cal. App. 5th 558, 561, 565. Thus, *Garcia* has no precedential value concerning a distinction between pure statutory wage claims and wage order-based claims, and is not persuasive given the overwhelming authority to the contrary, and is not binding on the court. Defendant's assertion that the ABC test should not apply is thus meritless.

**D.    WALMART was HILL's Employer Pursuant to all Three Alternative Tests for Employment Stated in the Wage Orders.**

WALMART's assertion that HILL was an independent contractor is not based on applicable law and ignores and misconstrues the facts. Based upon the analysis of applicable wage law, it is clear that for each employment, HILL's relationship with WALMART was, in

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

fact, an employment relationship obligating WALMART to *timely* pay HILL his wages in accordance with Labor Code section 201.

### 1. *Martinez v. Combs:* The Wage Order Definitions of Employment

In 2010, the California Supreme Court made a landmark ruling regarding California wage law in its decision in *Martinez v. Combs*, (2010) 49 Cal. 4th 35. Prior to *Martinez*, in determining whether an employment relationship existed in the context of the duty to pay wages, courts tended to apply the common-law formulation of the employment relationship as embodied in cases such as *S. G. Borello & Sons, Inc. v. Dept. of Industrial Relations* (1989) 48 Cal. 3d 34, ("*Borello*"). However, in *Martinez*, the Court noted that *Borello* was decided in the context of a *worker's compensation claim*. As the Court noted, the issue of the determination of employment in the context of *wages* had, surprisingly, never before come before the Supreme Court. The Court held that in order to determine the existence of an employment relationship giving rise to the duty to pay wages, reference must be made to the definitions of "employer" and "employee" stated in the Industrial Welfare Commission's Wage Orders.[2] The Court noted that all 16 of the Wage Orders contained the same three alternative definitions of employment:

> To employ, then, under the IWC's definition, has three alternative definitions.
> It means: (a) to exercise control over the wages, hours or working conditions,
> *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common
> law employment relationship.

*Id*. at 64 (italics in original, bolding added).

The common-law definition of employment incorporated into the Wage Order definitions is thus but one of *three alternative definitions of employment*, the satisfaction of any one of which, establishes the existence of the relationship, and hence the duty to pay wages. *Id*. at 64.

///

///

---

[2] Defendant's reliance on the definition of "independent contractor" contained in Labor Code section 3353 is misplaced as Section 3353 is part of the workers compensation statutes and thus is inapplicable to determination of status when applying statutes regarding payment of wages.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

## 2. *Dynamex Operations West, Inc. v. Superior Court:* Interpretation of the "Suffer or Permit to Work" Definition of Employment and the ABC Test

Very recently, in the case of *Dynamex Operations West, Inc. v. Sup. Ct.*, (2018) 4 Cal. 5th 903, the Court expanded on its decision in *Martinez*. In *Dynamex*, the Court again emphasized the primacy of the Wage Order definitions of "to employ" in wage and hour cases. However, in *Dynamex*, the Court focused upon interpreting the meaning and application of the second alternative Wage Order definition, namely, "to suffer or permit to work." The Court adopted a test ("the ABC test") which has been applied by courts in other jurisdictions when interpreting identical suffer to work language.

The Court held that pursuant to the "suffer or permit to work" standard in the wage orders, "the burden [is] on the hiring entity to establish that the worker is an independent contractor who was not intended to be included within the wage order's coverage." *Id.* at 956-957. To meet this burden, the hiring entity is required to establish <u>all three </u>factors embodied in the ABC test:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; **and** (B) that the worker performs work that is outside the usual course of the hiring entity's business; **and** (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

Id. at 956-957 (bolding added).

In *Dynamex*, the Court held because the defendant could not prove element "B" of the ABC test, the presumption of the plaintiff's status as an employee prevailed. Since the defendant could prevail only by proving all three elements, it was unnecessary to examine whether the defendant had proven elements "A" or "C."

Thus, not only does the "suffer or permit to work" definition of employment place on the imputed employer the burden to prove that the claimant worked as an independent contractor, but the imputed *employer can satisfy that burden only by proving all three elements of the ABC test*. If the imputed employer cannot meet its burden, the employment relationship is deemed established even without resort to the alternative wage-order definitions of employment.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

In the present case, HILL was WALMART's employee under both the "to control the hours, wages and working conditions" test and under the common-law test. However, more significantly, WALMART has not met its burden of proving that it did not "suffer or permit [HILL] to work," insofar as it has not proven *all three* elements of the ABC test.

### 3. Since WALMART Has Not Proven all Three Elements of the ABC Test, It Has Not Met Its Burden of Proving That It Did Not Suffer or Permit HILL to Work.

It is undisputed that HILL provided modeling services to WALMART. Therefore, pursuant to *Dynamex*, HILL will be *presumed* to have been the WALMART's employee for the jobs. In order to overcome that presumption, WALMART is required to prove ***all three elements*** of the ABC test. WALMART has failed to prove either element A or B of the test.

#### a. WALMART Has Not Proven Element A of the ABC Test

As to element A ("that the worker is free from the control and direction of the hiring entity in connection with the performance of the work"), it is undisputed that for each photo shoot, WALMART's photographer, stylist and producer were present. Obviously, as the organizer and conductor of the photo shoot, WALMART had the ultimate right of control, even if WALMART had also hired other personnel to participate in the conduct of the shoot or event. For each event, HILL's participation was under the constant control and supervision of WALMART's personnel. As such, WALMART has failed to prove that in performing her services, HILL was free of WALMART's control and direction. Therefore, WALMART has not its burden to overcome the presumption of employment and HILL is deemed to have been the WALMART' employees on the basis of *that element alone*.

#### b. WALMART Cannot and Has Not Proven Element B of the ABC Test

WALMART, likewise, cannot prove element B of the ABC test. WALMART is a retailer of apparel and engages in direct marketing of its retail products online. WALMART conducts its photo shoots in order to market the apparel which it sells. Thus, the photo shoots are an essential part of WALMART'S sales and marketing process.

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

WALMART has failed to meet its burden under element B that the work HILL performed for WALMART "is outside the usual course of the hiring entity's business." The photo shoots were conducted as a regular and re-occurring part of its sales and marketing activities. Thus, HILL's employments were, in fact, an *integral part* of WALMART' usual business activities.

WALMART has thus failed to meet its burden of proof under the "suffer or permit to work" definition. HILL is thus deemed to have been employed by WALMART on the basis of that definition alone. However, even if the WALMART had met its burden of proof under the suffer-to-work definition, employment relationships would nonetheless be found to exist between HILL and WALMART under each of the other two alternative Wage-Order definitions of employment.

**4. WALMART was HILL's Employer Also by Virtue of its Having Controlled, Both Directly and Through Others, HILL's Hours, Wages and Working Conditions**

Significantly, in describing the first of the three alternative Wage-Order definitions ("to exercise control over the hours wages and working conditions") the Court in *Martinez* emphasized that in order to establish employment under that first definition it is sufficient that the operation of control be indirect. Thus, the Court stated:

> At the same time, the IWC defined "employer" as meaning "any person ... who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of [an employee]."

*Id*. at 60 (bolding added). In commenting on the purpose of the disjunctive language of the definition, the Court observed:

> Second, phrased as it is in the alternative (i.e., "wages, hours, or working conditions"), the language of the IWC's "employer" definition has the obvious utility of reaching situations in which multiple entities control different aspects of the employment relationship, as when one entity, which hires and pays workers, places them with other entities that supervise the work. Consistently

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

with this observation, the IWC has explained its decision to include the language in one modern wage order as "specifically intended to include both temporary employment agencies and employers who contract with such agencies to obtain employees within the definition of 'employer'."

. . .

As we have explained, one of the reasons the IWC defined "employer" in terms of exercising control was to reach situations in which multiple entities control different aspects of the employment relationship. This occurs, for example, when one entity (such as a temporary employment agency) hires and pays a worker, and another entity supervises the work.

*Id*. at 59, 76.

To evade its status as HILL's employer, WALMART contends that HILL's "true" employer, is either HILL's talent agent (which is a ridiculous assertion since the agency works for HILL, not vice versa) or that HILL's "true" employer is the photographer, stylist and/or producer which WALMART contends it hired as "independent contractors" to conduct or participate in the conduct of the photo shoot. However, as is made clear by the Supreme Court in *Martinez*, even if WALMART operated control over HILL's hours, wages and working conditions only through a third party, WALMART would nonetheless be deemed to be HILL's employer under the Wage Order definitions. Although that third party might also come within the definition of an employer, WALMART would, nonetheless, remain liable as a *joint-employer*.

Further, there is a triable issue of material fact as to whether WALMART had its own personnel present at each shoot. The photographer, stylist and producers at the photo shoots told HILL that they were WALMART employees. (Low Dec, ¶ 2, Ex. 1, Pl. Depo, 44:1-4; 44:25-45:9), As the organizer of the shoot or fitting, WALMART had *ultimate* control over every aspect of the job, including the hiring of HILL, and the eventual payment of her wages. Thus, the evidence establishes that WALMART exercised direct and indirect control over HILL's hours, wages and working conditions. As such, WALMART will be deemed to have been HILL's employer under that alternative definition as well.

### 5. WALMART "Employed" HILL under the Common-Law Definition of Employment

As a third alternative definition of "to employ," the Wage Orders incorporate the common-law definition of employment. However, well before the Supreme Court rendered its decision in *Martinez*, it had long been settled as a matter of common law in California that professional models render their services as employees. The case of *Zaremba v. Miller* (1980) 113 Cal. App. 3d Supp.1, ("*Zaremba*") is the seminal case on this point of law. That case involved a model who was hired by a photographer for a photo shoot which lasted for two hours. The model had obtained the job through his agent and his agent billed the defendant for the services once the plaintiff had completed the shoot. The defendant did not, however, pay the plaintiff for five months. In arguing that the plaintiff was an independent contractor, the defendant argued that it was the industry practice for the photographer to pay the model once the photographer is paid.

In finding *as a matter of law* that the model was an employee, and thus had been entitled to the immediate payment of his wages at the end of the shoot under Labor Code section 201, the court in *Zaremba* applied the common-law test for employment stated by the California Supreme Court in *Borello*. In so finding, the court emphasized that under *Borello*, in determining employer-employee status, the most important factor is the **right of control** held by the imputed employer over the performance of the imputed employee.

HILL was subjected to the same pervasive level of control over the performance of her services as the plaintiff in *Zaremba*. Further, during the jobs, WALMART had the ultimate right of control over every aspect of those shoots. If WALMART was dissatisfied with HILL's performance, or indeed with the performance of any other participant in the photo shoots, WALMART had the right and power to direct or even fire the HILL or any participant in the shoots. Thus, WALMART was HILL's employer for the fittings even under the application of the common-law definition of employment.

///

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

**E.**     **As HILL's Employer, WALMART was Obligated to Timely Pay HILL her Wages in Accordance with the Labor Code, an Obligation it Failed to Meet.**

       **1.**     **HILL's Wages Earned in Modeling Employment Came Due at the Conclusion of her Participation in the Event**

Labor Code section 201 governs the timing of the payment of an employee's wages upon discharge from employment. Subsection (a) of Labor Code section 201 provides that upon discharge, an employee is entitled to immediate payment of all wages due.

In *Smith v. Superior Court*, (2006) 39 Cal. 4th 77, ("*Smith*") the California Supreme Court held that the completion of a one-day modeling job by a hair model constituted a "discharge" under Labor Code section 201. Thus, the plaintiff there was entitled to receive immediate payment of her wages upon completion of the job and was thus entitled to claim waiting-time penalties under Labor Code section 203 for the employer's failure to make immediate payment of those wages.

Pursuant to *Smith*, HILL's completion of each modeling assignment constituted a "discharge" from employment under Labor Code section 201. WALMART's failure to timely pay HILL her final wages for each and every one of each Plaintiff's employments subjects WALMART to liability for waiting-time penalties for each and every one of those employments.

**F.**     **WALMART Willfully Failed to Make Timely Payment of HILL's Wages**

Labor Code section 203 provides that where an employer willfully fails to timely pay an employee his or her wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." As used in Labor Code section 203, "willful" does not mean that payment was withheld for deliberate or evil purposes to defraud the employee, it merely means the employer "failed or refused to perform an act which was required to be done" *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 7.

       **1.**     **Statutory Wage Rights are not Waivable**

WALMART has argued that, under an agreement it made with HILL's talent agency, WALMART was not obligated to make payment of HILL's wages until 30 days after it received

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

an invoice from the agency, which it contends was also consistent with "industry practice." However, that attempted waiver of HILL's right to be paid in accordance with Labor Code section 201 was not effective. California statutory wage rights *are not waivable*, even if the employee explicitly agrees to waive those protections. The special status of wage rights under California law is exemplified by Labor Code section 219 (a) which provides, in relevant part, "**no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied**." (Emphasis added) The "article" in which Labor Code section 219 falls is Article 1, which encompasses Labor Code sections 200 through 244.

The courts have repeatedly and consistently held that Labor Code section 219 (a) renders the sections within its scope non-waivable. In fact, even the United States Supreme Court has recognized that California statutory wage rights are "non-negotiable" by virtue of Labor Code section 219. *Livadas v. Bradshaw*, (1994) 512 U.S. 107, 125, 128. The fundamental California public policy underlying Labor Code section 219 is so strong that the right to prompt wage-payment and to Labor Code section 203 waiting-time penalties cannot be preempted even by the federal collective bargaining statutes. *Balcorta v. Twentieth Century-Fox Film Corporation* (2000) 208 F.3d 1102, 1111. "[W]e agree with the Supreme Court that § 219 purports to "preclude[] any private contractual waiver of the[] minimum labor standards" set forth in the Code." *Ibid*. (Referencing *Livadas*.) The *Zaremba* court likewise cited section 219 in rejecting the defendant-photographer's attempted reliance on industry standards in justifying the timing of his payment of the plaintiff's wages. *Zaremba*, *supra*, 113 Cal. App. 3d Supp., at 6.

Thus, **pursuant to Labor Code section 219, none of the wage-obligations of an employer may be "set aside," waived or avoided, even upon agreement by the employee**. Where the conduct of the imputed employer establishes the existence of an employment relationship as defined in the Wage Orders, wage-payment obligations attach to the employer which cannot be waived. Pursuant to Labor Code section 219 (a), neither HILL nor her agent could effectively waive HILL's rights under Labor Code sections 201 and 203.

Finally, WALMART cannot avoid liability by asserting that HILL should be estopped from denying her supposed "waivers" of the Labor Code wage-payment statutes or by pleading

some other equitable remedy based on the supposed "unfairness" of imposing penalties against the WALMART. In *Ghory v. Al-Lahham* (1989) 209 Cal. App. 3d 1487, the court held that the equitable doctrine of unjust enrichment did not preclude the plaintiff from making a claim for overtime wages even though he had explicitly agreed to work overtime at a rate less than that required by Labor Code section 1194. *Id*. at 1492. The court noted that "[p]rinciples of equity cannot be used to avoid a statutory mandate." *Ibid*. Equitable principles likewise may not be relied upon by WALMART.

### 2. WALMART's Ignorance of the Ineffectiveness of its Contractual Attempts to Avoid its Statutory Wage Obligations Does Not Constitute a "Good Faith Defense" To HILL'S Claims for Waiting Time Penalties.

As used in Labor Code section 203 "willful" does not mean that payment was withheld for deliberate or evil purposes to defraud the employee, it merely means the employer "failed or refused to perform an act which was required to be done" *Barnhill v. Robert Saunders & Co*. (1981) 125 Cal. App. 3d 1, 7. In *Barnhill*, the employer withheld wages as an offset for a debt owed by the employee to the employer. In finding that the defendant's failure to timely pay was not willful, the court noted that at the time the employer made the offset, *the law was unsettled as to whether such an offset against wages was permissible*. Thus, *Barnhill* does not stand for the proposition that any good faith "belief" in the validity of a defense to the wage claim is sufficient to preclude imposition of a penalty under Labor Code section 203. Rather, the good faith belief must find some reasonable support in the law to be sufficient to preclude imposition of the penalty.

*Barnhill's* holding formed the basis upon which California Code of Regulations, title 8, section 13520 ("Section 13520") was promulgated. That Regulation provides that "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Section 13520 provides the following guidance in determining "good faith disputes":

> **(a)** Good Faith Dispute. A "good faith dispute" that any wages are due
> occurs when an employer presents a defense, based in law or fact which,
> if successful, would preclude any recover on the part of the employee. The

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

some other equitable remedy based on the supposed "unfairness" of imposing penalties against the WALMART. In *Ghory v. Al-Lahham* (1989) 209 Cal. App. 3d 1487, the court held that the equitable doctrine of unjust enrichment did not preclude the plaintiff from making a claim for overtime wages even though he had explicitly agreed to work overtime at a rate less than that required by Labor Code section 1194. *Id*. at 1492. The court noted that "[p]rinciples of equity cannot be used to avoid a statutory mandate." *Ibid*. Equitable principles likewise may not be relied upon by WALMART.

### 2. WALMART's Ignorance of the Ineffectiveness of its Contractual Attempts to Avoid its Statutory Wage Obligations Does Not Constitute a "Good Faith Defense" To HILL'S Claims for Waiting Time Penalties.

As used in Labor Code section 203 "willful" does not mean that payment was withheld for deliberate or evil purposes to defraud the employee, it merely means the employer "failed or refused to perform an act which was required to be done" *Barnhill v. Robert Saunders & Co*. (1981) 125 Cal. App. 3d 1, 7. In *Barnhill*, the employer withheld wages as an offset for a debt owed by the employee to the employer. In finding that the defendant's failure to timely pay was not willful, the court noted that at the time the employer made the offset, *the law was unsettled as to whether such an offset against wages was permissible*. Thus, *Barnhill* does not stand for the proposition that any good faith "belief" in the validity of a defense to the wage claim is sufficient to preclude imposition of a penalty under Labor Code section 203. Rather, the good faith belief must find some reasonable support in the law to be sufficient to preclude imposition of the penalty.

*Barnhill's* holding formed the basis upon which California Code of Regulations, title 8, section 13520 ("Section 13520") was promulgated. That Regulation provides that "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Section 13520 provides the following guidance in determining "good faith disputes":

> **(a)** Good Faith Dispute. A "good faith dispute" that any wages are due
> occurs when an employer presents a defense, based in law or fact which,
> if successful, would preclude any recover on the part of the employee. The

23

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. **Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable or are presented in bad faith, will preclude a finding of a "good faith dispute."**

*Ibid*. (Emphasis added.)

An asserted defense thus must have reasonable support under the law or under the disputed facts of the case in order to be deemed "reasonable." Any doubts about whether the inquiry under Section 13520 mandates the application of an *objective* standard were resolved by the decision in *FEI Enterprises, Inc., v. Yoon* (2011) 194 Cal. App. 4th 790. That case concerned the "prompt payment statute" which imposes a penalty on a general contractor who fails to timely pay its subcontractor, *Id*. at 796. The statute permits the general contractor to withhold payment only if there is a "good faith dispute" over the amount due. *Ibid*. The general contractor/defendant took the position that the "good faith dispute" inquiry was subjective and that it such a dispute could be established by showing that the general contractor had a "good faith belief" that a valid dispute existed. *Ibid*.

In determining the standard to be applied to establish a "good faith dispute" under Business and Professions Code section 7108.5, the court looked to the standards which had been held to apply to the determination of "bona fide dispute" in accord and satisfaction cases, the determination of "genuine dispute" in insurance bad faith cases, and the determination of "good faith dispute" in Labor Code section 203 waiting-time penalty cases. *Id*. at 801-804. Finding that all three determinations applied an *objective* standard, the court held that the determination of a "good faith dispute" under Section 7108.5 also presented an *objective* standard. *Id*. at 805.

In holding that the inquiry of willfulness under Labor Code section 203 applies an objective standard, the court discussed *Barnhill* and the above-quoted regulation which codified that decision, Section 13520, concluding that both applied an objective standard. *Id*. at 801-803. Utilizing language which, given the fundamental public policy underlying Labor Code section 203 is equally applicable to an analysis of the willfulness inquiry under Labor Code section 203, the court held:

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

A legal dispute between two parties exists, is "legitimate," "genuine," "bona fide," or in "good faith" where the arguments asserted or positions taken have objective legal tenability. . . . Thus, the proper standard to be applied to the question of whether there was a "good faith dispute" is, in our view, objective, not subjective. . . . **Certainly, a party who has no reasonable, objective justification for withholding payment under a construction contract, but "believes," by reason of delusion, ignorance, negligence of legal counsel or otherwise, that the money is not owed should not be able to avoid penalty interest on such ground**.

*Id*. at 805-806 (bolding added).

If the inquiry under Labor Code section 203 and Section 13520 was subjective, the law would encourage ignorance of the law, reward a lack of inquiry and encourage other "mischief" in not making timely payment of wages. Obviously, it could not be the Legislature's intent in enacting Labor Code section 203 to permit such easy evasion of the punishment mandated for failing to comply with what has repeatedly been recognized as a fundamental public policy, namely, the prompt payment of wages. *Pineda v. Bank of America, N.A.*, (2010) 50 Cal. 4th 1389, 1400.

That ignorance of the law cannot provide the basis of a "good faith dispute" is also manifest from the fact that the law presumes knowledge of the law by all persons. As the court observed in *Arthur Andersen v. Superior Court*, (1998) 67 Cal. App. 4th 1481 ("*Arthur Andersen*"):

It was established long ago that ignorance of the law does not excuse one from the consequences of the law. (See, e.g., *Brumagim v. Tillinghast* (1861) 18 Cal. 265, 271 [citing old English law; " '[e]very man' . . . 'must be taken to be cognizant of the law; otherwise, there is no saying to what extent the excuse of ignorance might be carried. It would be urged in almost every case.' "]; *Ruhl v. Mott* (1898) 120 Cal. 668, 678 [53 P. 304] [ignorance of the law cannot excuse]; *Hale v. Morgan* (1978) 22 Cal. 3d 388, 396 [149 Cal. Rptr. 375, 584 P.2d 512] [ignorance of the law is no excuse]; *Ainsworth*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

*v. State Bar* (1988) 46 Cal. 3d 1218, 1234 [252 Cal. Rptr. 267, 762 P.2d 431, 86 A.L.R.4th 1053] [ignorance of Rules of Professional Conduct does not excuse violations].) The rule that ignorance of the law is no excuse applies even in criminal proceedings, where personal liberty is at stake. [Citations omitted.] . . . It is thus clear that the legal effect of a statute cannot be avoided merely by pleading ignorance of the statute. If it could, the Legislature's efforts to shape public policy and the judiciary's efforts to interpret the statutory law and to shape the common law could easily be frustrated either by deliberate maintenance of ignorance or by false claims of it.

*Id*. at 1506-1507.

WALMART's incorrect "belief" that its attempt to prospectively *contractually* designate HILL as an independent contractor and *contractually* establish wage-payment terms inconsistent with those of the Labor Code was effective is founded upon, at best, ignorance of the law, and at worst, knowing disregards if the law. Whether under the common law or under the Wage Order definitions of employment, it is the *conduct* of the parties in carrying out the employment that determines the existence of an employment relationship. Once an employment relationship arises as a result of that conduct, the employer's wage-payment obligations *cannot* be avoided even upon agreement by the employee him- or herself. Labor Code section 219 (a). WALMART is charged with knowledge of that law. *Arthur Andersen*, *supra*, 1506-1507.

In fact, the *very existence* of the agreements between WALMART and Plaintiff's talent agency upon which WALMART relies in its attempts to justify its failure to timely pay HILL her wages, provides a prime example of the "mischief" the *objective* standard of the determination of willfulness is designed to avoid. The agreements proffered by WALMART demonstrate that WALMART was *fully* aware of the issue of the existence of potential employment relationships between it and *all of its models*. Yet despite the longstanding and well-established prohibition against the contractual waiver of employee wage rights, WALMART attempts just *exactly* that, by prospectively *contractually* declaring its models to be independent contractors, and *contractually* establishing model-payment terms inconsistent with those of the Labor Code.

*///*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST

Further, none of the statues, regulations or case law which make it clear that HILL was WALMART' employee is either unsettled or of recent vintage. The Wage Orders are more than 70 years old, the decision in *Zaremba v. Miller*, (1980) 113 Cal. App. 3d Supp. 1, in which applied the common-law test for employment, is 40 years old, and even *Martinez v. Combs*, (2010) 49 Cal. 4th 35, which established the applicability of the Wage-Order definitions of employment to wages claims is now 10 years old. Labor Code section 219 (a), which precludes the contractual waiver of wage rights, was enacted in 1937.

In short, WALMART purported ignorance of the ineffectiveness of its attempted prospective, contractual waivers of HILL's wage rights does not a "good faith defense" constitute. As such, WALMART has failed to establish, as a matter of law, that its repeated failures to make timely payment of HILL's wages were not *willful* under Labor Code section 203.

**IV.**

**<u>CONCLUSION</u>**

For the reasons set forth above, WALMART'S motion should be denied.


DATED:    November 25, 2020                Respectfully submitted,
                                           THE LAW FIRM OF JOSEPH H. LOW IV


                                           By:_____
                                           Joseph H. Low IV
                                           Attorney for Plaintiff.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4:19-cv-05436-JST