UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIJON HILL,<br><br>        Plaintiff,<br><br>    v.<br><br>WALMART INC.,<br><br>        Defendant. | Case No. 19-cv-05436-JST<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 41 |

Before the Court is Defendant's motion for summary judgment. ECF No. 41. The Court will grant the motion.

## I.    BACKGROUND

On July 19, 2019, Plaintiff Bijon Hill filed suit in San Francisco Superior Court against Walmart, Inc. and Doe Defendants alleging violations of California Labor Code § 201(a) and seeking penalty wages pursuant to Labor Code § 203. Complaint ("Compl"), ECF No. 3, Ex. A. Hill alleges that she was employed by Defendants to provide modeling services on fifteen separate days in 2016 and 2017. *Id.* ¶¶ 5-84. She alleges that each instance of her employment with Walmart was "pursuant to an employment agreement." *Id.* ¶¶ 7, 15, 23, 31, 39, 47, 55, 63, 71, 79. She further alleges that, despite having been discharged at the completion of each photo shoot, Walmart failed to make timely payment of her wages, as in each instance her wages were made more than 30 days after discharge. *Id.* ¶¶ 9, 17, 25, 33, 41, 49, 57, 65, 73, 81.

On August 29, 2019, Walmart answered the complaint and concurrently removed the action to federal court. ECF No. 1; ECF No. 3 at 27-31.

After some investigation, Walmart determined that Scout Talent Management was the agency with which it had contracted for the relevant photo shoots. ECF No. 33 at 3. On

September 1, 2020, Walmart sought leave to file a third-party complaint against Scout. *Id.* The Court granted Walmart's motion on January 8, 2021. ECF No. 46.

Walmart filed the present motion for summary judgment on November 13, 2020. ECF No. 41. Hill filed an opposition, ECF No. 43, to which Walmart replied, ECF No. 44. The Court held a hearing on January 13, 2021.

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## III.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. *See id.* If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On a summary judgment motion, the Court does not make credibility determinations or

2

weigh conflicting evidence with respect to disputed material facts. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## IV. EVIDENTIARY ISSUES

Walmart objects to a portion of Hill's deposition testimony on hearsay grounds. When asked by Walmart's counsel whether "anyone ever specifically [told her] that they worked for Walmart, " Hill responded that she had been told that by "[t]he stylist, the producer, the photographer." ECF No. 43-1 at 11-12. The objection is sustained. The Court will not consider this testimony.

## V. DISCUSSION

### A. Employee-Independent Contractor Classification

Walmart is entitled to summary judgment only if the undisputed facts, viewed in the light most favorable to Hill, demonstrate that Hill's work for Walmart was as an independent contractor, rather than an employee, under California law.[1] If so, then Walmart is not subject to penalties for untimely payment of employee wages under California Labor Code § 203.

#### 1. Legal Framework

Under California law, once evidence has been presented that an individual provided services for an employer, she is presumed to be an employee and the burden shifts to the employer to prove, instead, that she is an independent contractor. *Narayan v. EGL, Inc.,* 616 F.3d 895, 900 (9th Cir. 2010). Because the California Labor Code does not define "employee," *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10 (2007), courts have turned to tests beyond the statute to distinguish employees from independent contractors.[2]

---

[1] The parties do not dispute that California law governs the employment dispute. *See* ECF No. 41 at 11; ECF No. 43 at 9.

[2] At the hearing, Plaintiff's counsel argued that Hill was also Walmart's employee by virtue of

3

### a. California Common Law Test

For California's common law test for distinguishing employees from independent contractors, courts look to "the Supreme Court's seminal opinion" in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989). *See O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015); *see also Linton v. Desoto Cab Co., Inc.*, 15 Cal. App. 5th 1208, 1219 (2017) ("[T]here can be no doubt that *Borello* sets forth the common law test now applicable in our courts."). Under *Borello*'s analytical framework, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Borello*, 48 Cal. 3d at 350 (citation omitted). As to this inquiry, "[w]hat matters is whether the hirer 'retains all *necessary* control' over its operations." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (quoting *Borello*, 48 Cal. 3d at 357).

Beyond the right to control, *Borello* set forth a list of "secondary indicia drawn from the Second and Third Restatements of Agency that may in a given case evince an employment relationship." *Id.* at 532. These factors include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 958-59 (9th Cir. 2018) (quoting *Borello*, 48 Cal. 3d at 351). "Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." *Germann v. Workers' Comp. Appeals Bd.,* 123 Cal. App. 3d 776, 783 (1981). "Even if one or two of the individual factors might suggest an employment relationship, summary judgment is nevertheless proper

---

California Labor Code § 201.6. Because Plaintiff raised this argument for the first time during the hearing and did not mention it in her opposition, the Court declines to consider it. *See, e.g., Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1168 (C.D. Cal. 2013) (collecting cases).

4

1  when . . . all the factors weighed and considered as a whole establish that [the individual] was an
2  independent contractor and not an employee." *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App.
3  4th 580, 590 (2011) (citing *Varisco v. Gateway Sci. & Eng'g, Inc.*, 166 Cal. App. 4th 1099, 1106
4  (2008)).

5  "[T]he *Borello* standard is applied with an eye towards the purpose of the remedial statute
6  being enforced." *Cal. Trucking Ass'n*, 903 F.3d at 959. "In other words, *Borello* calls for the
7  application of a *statutory purpose* standard that considers the control of details and other
8  potentially relevant factors identified in prior California and out-of-state cases in order to
9  determine which classification . . . best effectuates the underlying legislative intent and objective
10 of the statutory scheme at issue." *Id.* (quoting *Dynamex Operations W. v. Superior Court*, 4 Cal.
11 5th 903, 934 (2018)).

### b. California Wage Order Tests

13 A second definition of "employ" under California law has also guided courts in certain
14 circumstances. The California Industrial Welfare Commission ("IWC") defines "employer" in its
15 wage orders as one "who directly or indirectly, or through an agent or any other person, employs
16 or exercises control over the wages, hours, or working conditions of any person." *See, e.g.,* Wage
17 Order No. 14, Cal. Code Regs., tit. 8, § 11140, subd. 2(F); *see also Martinez v. Combs*, 49 Cal. 4th
18 35, 59 (2010) ("The same language appears today in all 16 of the IWC's industry and occupation
19 orders."). In construing this definition, "the California Supreme Court has provided three
20 alternative definitions for what it means for a person or entity to 'employ[]' someone: '(a) to
21 exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or*
22 (c) to engage, thereby creating a common law relationship.'" *Salazar v. McDonald's Corp.*, 944
23 F.3d 1024, 1029 (9th Cir. 2019) (quoting *Martinez*, 49 Cal. 4th at 64). "The test is disjunctive: [a
24 plaintiff] need only plead facts sufficient to meet one of these categories" in order to qualify as an
25 employee. *Williams v. Nichols Demos, Inc.*, No. 18-cv-00884-JSW, 2018 WL 11236757, at *3
26 (N.D. Cal. June 20, 2018).

27 Under the first definition, "a promise to pay a person for work would be an offer of
28 employment, as well as an exercise of control over wages and hours sufficient to bring the

5

promisor within the wage order's definition of 'employer.'" *Martinez*, 49 Cal. 4th at 74.

Under the second definition, the California Supreme Court acknowledged that "the literal language of the suffer or permit to work standard does not itself resolve the question whether a worker is properly considered a covered employee rather than an excluded independent contractor." *Dynamex Operations*, 4 Cal. 5th at 949. Therefore, the court clarified the standard by adopting the "ABC" test to distinguish between employees and independent contractors. *Id.* at 955. Stated in full, *Dynamex* held that

> [I]t is appropriate, and most consistent with the history and purpose of the suffer or permit to work standard in California's wage orders, to interpret that standard as: (1) placing the burden on the hiring entity to establish that the worker is an independent contractor who was not intended to be included within the wage order's coverage; and (2) requiring the hiring entity, in order to meet this burden, to establish each of the three factors embodied in the ABC test—namely (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Id.* at 957-958.[3]

Lastly, under the third definition, it is largely recognized that *Martinez* incorporates the *Borello* test. *See Salazar*, 944 F.3d at 1032; *Williams*, 2018 WL 11236757, at *5 ("'[T]o engage' means to create a common law employment relationship" which "exists where a party reserves the general right to control the 'manner and means' of performing the work at issue." (citing *Martinez*, 49 Cal. 4th at 64; *Borello*, 48 Cal. 3d at 350)).

### c.  Choice of Tests

Walmart contends that the common law test must be applied to determine if an individual is an employee or independent contractor in cases where, as here, the plaintiff brings no wage order claims. ECF No. 41 at 12 n.4. Walmart points out that the *Dynamex* Court declined to

---

[3] The Ninth Circuit has certified to the California Supreme Court the question of whether *Dynamex* applies retroactively. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045, 1049 (9th Cir. 2019).

1    answer the question of whether the wage order definitions should be extended to apply to relief

2    sought under California Labor Code provisions.  *Id.*; *see also Dynamex*, 4 Cal. 5th at 916 n.5.

3    Hill disagrees, arguing that the IWC definition of employment controls for claims brought under

4    California wage statutes.  ECF No. 43 at 11.

5          The Court need not decide this question.  As noted above, the third wage order test

6    incorporates the common law test, such that "to employ" can be defined as "to engage, thereby

7    creating a common law relationship."  *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1029 (9th

8    Cir. 2019) (quoting *Martinez*, 49 Cal. 4th at 64); *see also id.* 944 F.3d at 1032.  Thus, Walmart's

9    motion must be denied unless it can satisfy the common law test set forth in *Borello*.

### 2. Application of the Common Law Test

11   "In order to prevail on a motion for summary judgment," Walmart must "establish that a

12   jury would be compelled to find that it had established by a preponderance of the evidence that the

13   plaintiff was an independent contractor."  *Henninghan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d

14   1083, 1099 (internal quotation marks, alterations, and citation omitted).  "This standard is difficult

15   to meet at the summary judgment stage," *Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2017

16   WL 2951608, at *3 (N.D. Cal. July 10, 2017), particularly "in light of . . . the multi-faceted test,"

17   *Narayan,* 616 F.3d at 900.  Nevertheless, summary judgment may be appropriate if it is clear that

18   "the arrow point[s] so strongly in the direction of one status or the other that no reasonable juror

19   could . . . point[] the arrow in the opposite direction after applying California's multi-factor test."

20   *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015).

21         Starting with the "principal test" of the employment relationship, the Court examines

22   whether Walmart, in its engagement with Hill, had "the right to control the manner and means of

23   accomplishing the result desired."  *Borello*, 48 Cal. 3d at 350.  "Significantly, what matters under

24   the common law is not how much control a hirer *exercises,* but how much control the hirer retains

25   the *right* to exercise."  *Ayala*, 59 Cal. 4th at 533 (emphasis in original).  "Perhaps the strongest

26   evidence of the right to control is whether the hirer can discharge the worker without cause,

27   because '[t]he power of the principal to terminate the services of the agent gives him the means of

28   controlling the agent's activities.'"  *Id.* at 531 (quoting *Malloy v. Fong*, 37 Cal. 2d 356, 370

7

(1951)). "Plainly, the inquiry begins with the written policies and written employment contracts." *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2020 WL 4340172, at *4 (N.D. Cal. July 28, 2020).

Walmart's contention that it "exercised no control over the manner and means by which Plaintiff performed her modeling services," ECF No. 41 at 12, is not supported by undisputed evidence. To the contrary, there is significant evidence that Walmart, not Hill, had the right to control those services. For example, Walmart dictated the beginning time of the photo shoot; required Hill to arrive with her hair and makeup photo-ready; dictated what kind of nail polish she could wear; told her what kind of undergarments she could have on; and told her how her feet must look. ECF No. 43-1 at 13; *see also id.* at 18-19 (Hill testifying that when she arrived at a photo shoot, Walmart's employees or agents would "mak[e] sure that [her] nails were the way that they wanted them to be and just overall that [her] appearance was the way that they wanted it to be before [they] started shooting"); *id.* at 23-24 (the producer, not Hill, had the authority to change poses, makeup, nails, and hair; "she was pretty much in control of the entire shoot day"); *id.* at 26 (same). These were not suggestions; Hill regarded them as "rules because they wouldn't want me to be there if I didn't show up adhering to everything written." *Id.* at 13. Nor was she in control of her hair or makeup – Walmart could change these aspects of her appearance "once [Hill] arrived or at anytime during the shoot" if it was dissatisfied. *Id.* at 17. Similarly, although Walmart contends that Hill "us[ed] her discretion and expertise as a model in making poses," ECF No. 44 at 6, the record is in conflict. Hill testified that she was given significant instruction for "pretty much anything when it came to the shoots." ECF No. 43-1 at 26. She elaborated:

> Q: So after you were given your first look/outfit, what would happen after that?
>
> A: Then we would begin shooting, meaning I would do various poses. Whichever poses they wanted me to have they would tell me specifically. Stand – which way to stand, how to – you know, where to place my hands so I wasn't covering up whatever the main focal point of the product was [sic]. I would do front, side, back shots, whatever they would tell me. They would – I was being directed by the photographer.

ECF No. 41-1 at 31. Walmart attempts to qualify these facts by arguing that it "retained other

1  independent contractors who controlled the shoots and were responsible for producing the end
2  product," ECF No. 41 at 12, but there are two problems with this argument.  First, it is not clear
3  why Hill is not an employee just because those supervising her might be independent contractors,
4  and Walmart cites no authority for that proposition.  More fundamentally, Walmart's evidence
5  does not support the assertion.  What the cited declaration actually says is that the photographers
6  and stylists "typically" were not Walmart employees and that the photo shoot producer was a
7  freelance worker "on occasion."  ECF No. 41-2 ¶¶ 11, 13.  Walmart submits no evidence about the
8  employment status of the various individuals actually involved with Hill's photo shoots, leaving
9  open the possibility that some or all of them were Walmart employees.

10  Although that alone prevents the Court from determining that Hill was an independent
11  contractor as a matter of law, *Cotter*, 60 F. Supp. 3d at 1079, secondary considerations also point
12  against such a judgment.  For example, Hill did not provide the tools or instrumentalities of the
13  engagement; the place of work was a Walmart photo studio, ECF No. 43-1 at 9-10; and Walmart
14  supplied the outfits or accessories that Hill used for each shoot, ECF No. 41 at 31.  *Cf. Lawson*,
15  2017 WL 2951608, at *6.  In addition, Hill's work was done under "extensive supervision and
16  monitoring."  *See Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2015 WL 5179486, at
17  *49 (N.D. Cal. Sept. 3, 2015); *see also* ECF No. 41-1 at 31.

18  Some of the *Borello* factors point toward independent contractor status.  For example, Hill
19  was paid a flat daily rate and not by the hour.  ECF No. 41 at 14-15; *see also* ECF No. 41-2, Ex. E.
20  She was hired for one- or two-day-long modelling sessions.  Compl. ¶¶ 6, 14, 22, 30, 38, 46, 54,
21  62, 70, 78.  Hill could and did "perform work for other companies" while working for Walmart.
22  ECF No. 41-1 at 46-47; *see also Lawson*, 2017 WL 2951608, at *6.  She also sought tax
23  deductions for expenses associated with her work at Walmart's photo shoots and other modelling-
24  related expenses.  ECF No. 41-1 at 48-49; *see also Henninghan*, 38 F. Supp. 3d at 1102 (finding
25  that plaintiff identified as self-employed on his tax returns weighed in favor of an independent-
26  contractor relationship).

27  These considerations, however, are not sufficient to compel a finding that Hill is not a
28  Walmart employee.  The parties' relationship is examined holistically, and she does not have to

satisfy every factor in order to establish an employment relationship.  *See Arnold*, 202 Cal. App. 4th at 590.  All Hill need do at this stage is demonstrate that the factors as a whole show a reasonable dispute as to her employment status.  *See Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988 (9th Cir. 2014).  She has done so.

### B. Willfulness of Alleged Violations

Walmart argues that, even if it is determined that it was Hill's employer under Labor Code § 201's timely wage payment rule, it is not subject to § 203 penalties because any failure to pay timely wages was not "willful."  ECF No. 41 at 15.

California Labor Code § 203 provides, in relevant part, that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Section[] 201. . . , any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days."  According to California courts, "[t]he purpose of section 203 is to compel the prompt payment of earned wages; the section is to be given a reasonable but strict construction."  *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981).  "As used in [the statute], 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done."  *Id.*

"*Barnhill*'s holding was memorialized in California Code of Regulations, title 8, section 13520."  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008).  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  Cal. Code Regs., tit. 8 § 13520.  The regulation defines "good faith dispute" as occurring

> when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.  Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'

*Id.*  "This regulation 'imposes an objective standard.'"  *Maldonado v. Epsilon Plastics, Inc.*, 22

10

Cal. App. 5th 1308, 1332 (2018) (quoting *FEI Enterprises, Inc. v. Yoon*, 194 Cal. App. 4th 790, 802 (2011)). Because "a 'good faith dispute' excludes defenses that 'are unsupported by any evidence, are unreasonable, *or* are presented in bad faith,'" "[a]ny of the three precludes a defense from being a good faith dispute." *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 874 (2018) (quoting Cal. Code Regs., tit. 8, § 13520(a)).

Walmart contents that it "has presented substantial evidence in support of its position that it was not Plaintiff's employer based both on the contractual agreements between Walmart and Plaintiff's agent Scout, and the objective conduct of both Walmart and Plaintiff." ECF No. 41 at 15. Furthermore, Walmart argues that "there is no evidence in the record showing that Walmart's good faith belief that Plaintiff was an independent contractor was unfounded or improperly motivated." ECF No. 44 at 10.

The Court agrees. Although Walmart has not satisfied its burden of showing that it is entitled to summary judgment on the ground that Plaintiff is an independent contractor, it has demonstrated that a good faith dispute exists as to whether Hill should be classified as an employee or independent contractor. *See Dalton v. Lee Publ'n, Inc.*, No. 08-cv-1072 BTM (NLS), 2011 WL 1045107, at *5-6 (S.D. Cal. Mar. 22, 2011). As set forth above, Hill's deduction of modeling-related expenses on her taxes, ECF No. 41-1 at 48-49, and performance of work for other companies during the time she worked for Walmart, *id.* at 46-47, suggest that she was "engaged in a distinct occupation or business." *See Borello*, 48 Cal.3d at 351. Hill worked by the day – or job – and not by the hour. The length of time for which she was employed is consistent with independent contractor status – or at the very least is not inconsistent with such a status. *Cf. Air Couriers*, 150 Cal. App. 4th at 937. These facts tend to show, therefore, that Walmart had some basis to believe that she was an independent contractor rather than an employee. *See Topete v. Red Robin Int'l, Inc.*, No. SACV 17-01721 AG (JDEx), 2018 WL 5917905, at *2 (C.D. Cal. Aug. 30, 2018). Even if ultimately insufficient to deem Hill an independent contractor, the above facts present some "objectively reasonable" evidence as defense to her wage claim. *See Maldonado*, 22 Cal. App. 5th at 1333.

Hill asks the Court to reject Walmart's good faith argument on two grounds. First, Hill

argues that Walmart's consulting agreement with Scout Talent Management "demonstrate[s] that Walmart was fully aware of the issue of the existence of potential employment relationships between it and all of its models" because the agreement attempts to "prospectively contractually declar[e] its models to be independent contractors, and contractually establish[] model-payment terms inconsistent with those of the Labor Code."  ECF No. 43 at 26.  However, "mere awareness of the possibility that a Court could find that Defendant's [hired models] were employees does not negate a finding that a good faith dispute exists on the issue of whether Plaintiff was subject to the Labor Code provisions at issue."  *See Dalton*, 2011 WL 1045107, at *6.  Furthermore, the existence of Walmart's agreement with Scout Talent Management may have led Walmart to believe that Hill's employment relationship, if any, was with Scout rather than Walmart.  Second, Hill argues that the existing caselaw should have put Walmart on notice that Hill was an employee.  ECF No. 43 at 27 (pointing to 70-year old California wage orders, and decisions in *Zaremba v. Miller*, 113 Cal. App. 3d Supp. 1 (Cal. App. Dep't Super. Ct. 1980) and *Martinez v. Combs*, 49 Cal. 4th 35 (2010)).  None of Hill's authorities, however, conclusively resolves the question of employment status on the facts present here.

The Court finds there is a good faith dispute regarding whether Hill is an employee and that any potential misclassification was not willful.  Cal. Lab. Code § 203; Cal. Code Regs., tit. 8, § 13520(a).  Walmart is entitled to summary judgment on this basis.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Walmart's motion for summary judgment. The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated:  January 14, 2021

_____
JON S. TIGAR
United States District Judge